JONAU
*v.*
DREUX.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## WEST *v.* HIS CREDITORS.

| La.Ann. | |
|---|---|
| 1 | 365 |
| 109 | 288 |
| | |
| 1 | 365 |
| 111 | 313 |

Prescription is interrupted by a *cessio bonorum* made by the debtor.

Where a creditor of an insolvent claims, adversely to the other creditors, that a payment made by a third person in discharge of a judgment on a bond in which the creditor was surety for the insolvent, was made by such third person as his agent, he must prove the fact; it will not be presumed.

The syndic of an insolvent is entitled to commissions on an amount paid to an agent, employed to procure payment of a claim due to the estate.

One who had made a *cessio bonorum* under the State law, and was afterwards discharged as bankrupt under the act of Congress of 19th August, 1841, is a competent witness to prove the correctness of the debts acknowledged by him in his *bilan* filed at the time of his cession, unless disqualified on account of his personal relationship to the creditor, or where the debt is due to his wife.

Laws on the subject of the competency of witnesses, being purely remedial, take effect in all cases from their enactment.

A debt is not extinguished by the death or insolvency of the creditor.

The omission to record the claim of a wife for dotal property as required by the stat. of 26th March, 1813, does not render it null and void. It will still subsist, as an ordinary debt between the husband and wife; and, in case of the insolvency of the husband, she will be entitled to payment with the rest of his creditors.

APPEAL from the District Court of the First District, *Buchanan*, J. The judgment of the court was pronounced by

WEST
v.
HIS CREDI-
TORS.

ROST, J.* In 1819, *John K. West* made application for a respite, which appears to have been granted by his creditors. He failed to comply with the terms thereof, and, in 1821, some of the creditors proceeded against him for a forced surrender. When notified of these proceedings, he made into court a surrender of all his property, which was accepted, and the creditors appointed a syndic who took charge of it. The assets surrendered at that time being entirely unavailable, most of the creditors neglected to prove their claims. Among these assets was a large claim against the Mexican republic, which has since been liquidated by the board of commissioners under the convention of the 11th of April, 1839, between the United States and the republic of Mexico, and upon which the sum of $43,650 04 has been allowed. The interest due on this sum, and the first three instalments of the capital, have been paid, and the syndic has filed a tableau of distribution of the amount received among the creditors.

This cause comes before us on the appeal of the opposing creditors†, from the decision of the court below upon their various oppositions. We will notice those oppositions, in the order in which they are found in the judgment appealed from.

1st and 2d. The claims of the heirs of *Hull*, and of the syndic of *Greenbury Dorsey: West*, before his failure, had sold to *Hull* and *Greenbury Dorsey*, without authority, property belonging to *Van Pradelles*, and had not accounted for the proceeds. After his failure, the heirs of *Van Pradelles* recovered the property from *Hull* and *Dorsey*. The legal representatives of these parties are, in consequence of the eviction, subrogated to the rights of *Van Pradelles* against the insolvent, and as the cause of the eviction was anterior to the failure, their claim cannot be barred by prescription.

3d. There is no error in the judgment upon the claim of *François Duplessis, Sr.* It was a mortgage claim. This creditor caused the property mortgaged to be sold, and the court has allowed the balance due, after deducting that part of the proceeds of the sale which went to the extinguishment of the mortgage.

4th. *François Duplessis, Jr.*, alleges that there is error in the judgment rendered upon his opposition, in this : 1st. That the court should have allowed him the sum of $2368 41, paid by him to the United States, under a judgment upon a custom-house bond, on which he was one of the sureties. 2d. That the court should further have allowed interest upon his whole claim. We think the court erred in refusing to allow interest on the amounts of the judgments in favor of the United States, satisfied by this creditor. He is subrogated to the rights of the United States, and all claims thus due them bear interest by law. In relation to the claim of $2368 41, we are of opinion there is no error. Admitting that the marshal's return, stating how and by whom the writ had been satisfied, may be explained, or even contradicted, by the evidence of that officer, that evidence does not make it certain that any portion of the amount of the judgment was paid by *François Duplessis, Jr.* The witness states that he was referred to *F. Duplessis, Sr.* for the payment of one-half of the judgment, and that he called upon the said *Duplessis*, who paid it. *Duplessis, Sr.*, was not a party to the bond or to the suit, and the witness believed at the time that he made the payment on account of his son-in-law, *John K. West*, and on account of his son, *F. Duplessis, Jr.* The receipt given by the witness was to *François Duplessis, Sr.*, in his own right, and not as agent of his son.

---

\* EUSTIS, C. J., having been of counsel in this case, did not sit on its trial.

† The syndic also appealed.

It is contended that, as *F. Duplessis, Sr.* was not personally bound for the debt, we must presume that he paid it for his son, whose agent he was at the time. The peculiar relation in which he stood towards *West* and his wife, and the testimony of the marshal, both tend to weaken that presumption; and we hold it to be insufficient in any case, to establish a claim against an insolvent, adversely to his other creditors. The authority cited from Paley is not applicable to a litigation *in concurso.* If the judgment was paid by the agent out of the funds of the principal, it was incumbent upon the principal to prove that fact, and as he failed to do so, the claim was properly rejected. Paley on Agency, p. 264.

The court correctly recognized the right of this creditor, to be paid by priority the amounts of the judgments rendered in favor of the United States, and satisfied by him. The failure of *West* to comply with the terms of the respite, was an act of bankruptcy; and he made besides afterwards a surrender of all his property for the benefit of all his creditors. 3 Cranch, p. 91.

. The court properly disregarded the evidence adduced to show that the whole amount claimed by him had been settled and paid. The settlement of accounts made in 1842 between him and *West,* has reference to transactions subsequent to the failure of the latter, and cannot affect his rights upon the fund held by the syndic.

This creditor further opposes several of the privileged, and all the ordinary claims placed on the tableau. He first opposes the item of syndic's commission, which is charged on the whole sum allowed by the commissioners. The court below reduced that item to the commissions on the three instalments actually received by the syndic. In this, we think, there is error. The syndic made an agreement with a person in Washington who undertook to attend to and prosecute the claim, and stipulated to give that person ten per cent upon the amount recovered. That compensation, amounting to $4365 20, has been paid, and the syndic is entitled to receive his commissions upon it.

The next privileged claims opposed are the fees of the counsel of the syndic. It is in evidence that they were employed from the beginning of the failure; that they rendered many important services; and after a delay of six and twenty years received each $1,000. This disbursement is every way reasonable, and we will not disturb it.

The ordinary claims allowed by the tableau are fifty-one in number. They are all opposed by *F. Duplessis, Jr.,* and by Mrs. *West.* By consent of parties the claim of *A. L. Duncan's* estate was reduced from $5432 22 to $1025 51. In support of the other claims much evidence was adduced, apart from that which is contained in the books of the insolvent. The insolvent himself, who has lately obtained a discharge under the bankrupt act, has testified that the statements of these claims on his books and in his schedule were correctly made, and the debts therein mentioned really due by him. His evidence was objected to, and the bill of exceptions comes up with the record.

We think the court did not err in receiving it for what it was worth, so far as it went to charge the estate, except in proving the claims of his wife. Under the Spanish law of evidence, in force at the time of the failure, the insolvent could not have been a witness; but that law has been superseded by another, which does not contain that disqualification; and the laws on the competency of witnesses, being purely remedial, take effect in all cases occurring after their passage.

WEST
v.
HIS CREDI-
TORS.

The claims proved by this witness appear to have been from the beginning admitted by the syndic, on the evidence of the insolvent's books. It is proved that they are written on those books, in the handwriting of a clerk of the insolvent, who is now dead; and the insolvent himself has made oath that they are justly due. At this distance of time, this is the best evidence the nature of the case admits of. If in truth they are not due, it was incumbent upon the opposing creditors to have shown it.

The court properly rejected the claim of *Joseph P. Homer*, on the ground that it had been paid, and that of *Rebecca K. West*, because it had been extinguished by confusion; but the court further rejected fourteen other claims, on the ground that they had abated by the death, or insolvency, of the creditors. Among them is that of *Lloyd* and *Harrison*, the very parties who forced the insolvent into court. This is clearly wrong. The various modes in which debts can be extinguished are enumerated in the Civil Code, and neither death nor insolvency are of the number. These parties all have, or can have, legal representatives, and it is our duty to preserve the dividends coming to them.

The last opposition is that of Mrs. *Adelaide West*, the wife of the insolvent. She claims to be placed on the tableau for $6,000, being so much brought in the marriage as a *dot*, and received by her husband. The court sustained the opposition for $5400 as an ordinary claim, and we are satisfied that there is no error in the decision. It is in evidence that, in 1842, *John K. West* went into the bankrupt court; that this claim was referred to a commissioner of that court, who reported that Mrs. *West* was entitled to be paid by privilege the full sum of $6,000; that upon this report, the judgment of the court intervened, declaring the rights of Mrs. *West* to be as therein stated. That judgment has been pressed upon us in argument, as *res judicata*. We are clear it cannot be viewed in that light; the parties were not the same, nor was the subject matter the same in both courts. The object of these proceedings is the distribution of a specific fund, over which the Supreme Court of the United States has decided that, the State court seized with the first failure of *West* had exclusive jurisdiction; the rights of Mrs. *West* in that fund cannot, therefore, be affected by the decisions of the United States Court. Under the laws in force at the time of the failure, the wife had no privilege for the payment of her dotal rights, even when her claims had been properly recorded under the act of 1813; but the claim of Mrs. *West* was not thus recorded, and the opposing creditors contend that, under the provisions of that act, it is absolutely null and void. We cannot recognize as true, a construction that would lead to such a result. That she has lost her right of mortgage, there can be no doubt; but, between her and her husband, the claim still subsists as an ordinary debt. If she had died, leaving her husband solvent, he would have been obliged to pay the amount to her heirs. She must therefore be entitled to her share of the common pledge, as a creditor. The deduction made by the district judge for the value of a piano received by Mrs. *West* in part payment of her *dot*, and given by her to her sister, was legal and proper.

For the reasons assigned, it is ordered that the judgment be reversed; and proceeding to give such a judgment as should have been rendered by the court below, it is further ordered that, the tableau annexed to this decree, and made in conformity with the principles of this decision, stand as the final tableau of distribution of the fund in the hands of the syndic, with directions to the court below to cause to be paid into court, and deposited in one of the banks of this

city, the dividends of the creditors not properly represented, there to remain subject to be claimed by the legal representatives of those creditors during the space of twelve months, after which time the court shall cause the amount of the dividends not claimed to be distributed among the creditors. It is further adjudged that the costs of both courts be paid by the syndic, out of the funds in his hands.

<span style="float:right"><small>WEST<br>*v.*<br>HIS CREDI-<br>TORS.</small></span>

*L. C. Duncan* and *A. Hennen,* for the syndic. *Hornor, H. D. Ogden, Hoff-man, G. B. Duncan* and *H. H. Strawbridge,* for different creditors.