Hermine CHOVAN, Administratrix of the Estate of Samuel Chovan, deceased, and Hermine Chovan, Plaintiff,

v.

E. I. DU PONT DE NEMOURS & COMPANY, a Delaware Corporation, and The Ensign-Bickford Company, a Connecticut Corporation, Defendants.

Civ. A. No. 21607.

United States District Court
E. D. Michigan, S. D.
May 24, 1963.

91. Report of the Attorney General's National Committee to Study the Anti-Trust Laws, March 31, 1955, p. 124.

Markle & Markle, by Fergus Markle, Detroit, Mich., for plaintiff.

Miller, Canfield, Paddock & Stone, by George E. Bushnell, Jr., Detroit, Mich., for defendant DuPont.

Dickinson, Wright, McKean & Cudlip, by Fred W. Freeman and John A. Ziegler, Jr., Detroit, Mich., for defendant Ensign-Bickford.

McCREE, District Judge.

This is a wrongful death action brought by Hermine Chovan, Administratrix of the Estate of Samuel Chovan, deceased, against E. I. DuPont de Nemours & Company, a Delaware Corporation and the Ensign-Bickford Company, a Connecticut Corporation. The jurisdictional requirements of diversity and dollar amount are pleaded.

Plaintiff alleges that blasting caps manufactured by DuPont and fuse and hot wire fuse lighters manufactured by Ensign-Bickford were defective and caused a dynamite charge to explode prematurely resulting in the death of Samuel Chovan, a miner employed by Mauthe Mining Company in Gogebic County, Michigan. The fatal accident occurred in October, 1958.

Defendant Ensign-Bickford Company appeared specially and moved to quash the return of service of summons and complaint on the ground of lack of jurisdiction.

Service was made on the Ensign-Bickford Corporation on January 2, 1963, in Simsbury, Connecticut by the United States Marshal pursuant to the Michigan General Court Rules of 1963, and the Michigan Revised Judicature Act. (Act No. 236, P.A.1961) Both the Act and the Rules became effective January 1, 1963.

Defendant asserted in support of its motion that the Revised Judicature Act does not operate retroactively upon a cause of action which arose in 1958 and that retroactive application would impair vested rights in violation of the Fourteenth Amendment to the United States Constitution. Defendant Ensign-Bickford also claimed that it lacks the contacts with Michigan which would constitutionally subject it to limited *in personam* jurisdiction of this court. When the motion was argued orally, defendant withdrew its claim that service was made in violation of rule 4(f) of the Federal Rules of Civil Procedure.

The major issues before the court are:

1. Are the provisions of the Michigan Revised Judicature Act relating to jurisdiction restricted to causes of action arising after its effective date, January 1, 1963?

2. Does defendant Ensign-Bickford Company have sufficient contacts with the State of Michigan to render it amenable to limited personal jurisdiction?

1. *Provisions of the Michigan Revised Judicature Act relating to*

*jurisdiction are not restricted to causes of action arising after January 1, 1963, its effective date.*

The service of summons in this case was accomplished pursuant to Federal Rule 4(d)(7) which permits service of process in the manner allowed by state law. Defendant has conceded that the state law involved is the law of the state in which the Federal Court is held (in this case Michigan) and not the law of the state in which service was made (in this case Connecticut). Michigan Court Rule 105.9, in effect on the date service was accomplished, provides:

"Service of a summons and a copy of the complaint * * * shall confer personal jurisdiction over a defendant having any of the contacts, ties, or relations with this state as specified in RJA Chapter 7, by giving notice to the defendant of the pendency of the action and an opportunity to defend. There is no territorial limitation on the range of the service of such notice."

The Revised Judicature Act, Chapter 7, Section 715 (M.S.A. § 27A.715) provides:

"The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

"(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort."

It is defendant's claim that there is an absence of legislative intent to make Court Rule 105.9 and RJA Section 715 applicable to causes of action which arose prior to the effective date. Defendant bases its claim upon the language of Section 715 and does not refer the court to committee reports or similar material.

■ The statutory language applies by its terms to one who, at the time of the effective date, occupies a particular relationship arising out of certain acts. A statute is not retroactive merely because it may depend upon antecedent facts for its operation. Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922). See also Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957).

■ Generally, statutes relating to procedure apply to pending as well as to future proceedings. The rule which forbids application of new enactments or revisions to pending actions generally applies only to statutes dealing with substantive rights. Sampeyreac v. United States, 32 U.S. (7 Pet.) 222, 238, 8 L.Ed. 665 (1833); Railroad Co. v. Grant, 98 U.S. (8 Otto) 398, 25 L.Ed. 231 (1878); Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916); Dargel v. Henderson, 200 F.2d 564, 566 (Em. C.A., 1952); Fancher v. Clark, 127 F. Supp. 452, 460 (D.C.Colo., 1954); Hadlich v. American Mail Line, 82 F.Supp. 562 (N.D.Calif.1949); 2 Sutherland, Statutory Construction, 3rd ed., § 2212 (1943). "The aim being procedural, it is axiomatic that, unless the contrary appears, the provisions are applicable to pending proceedings." United States v. National City Lines, 80 F.Supp. 734, 738 (S.D.Calif.1948). See also Beebe v. Birkett, 108 Mich. 234, 65 N.W. 970 (1896).

Defendant cites in support of its argument RJA Section 9905(1), M.S.A. § 27A.9905, which provides:

"Except as specifically stated or reasonably inferred from the provisions of this act, this act shall not impair or affect any act done, offense committed or right accruing, accrued, or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted, or inflicted as if this act had not been passed."

■ Since the procedural provisions of the RJA were intended to govern all litigation subsequent to its effective date it may be reasonably inferred that it applies to causes of action which arose or were pending prior to such date. Section 9905 may operate as a savings clause for substantive or vested rights but without more, this section does not appear to be intended to forbid entirely the application of the RJA to the procedural aspects of pending litigation.

■ Defendant claims that application of the court rule and statute to pending litigation would deprive defendant of a vested right without due process of law.

■ Although defendant may have a vested right not to be subjected to retroactive application of a statute which creates a new cause of action, it does not have a vested right not to be sued in a particular forum on an existing cause of action. McGee v. International Life Insurance Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Ogdon v. Gianakos, 415 Ill. 591, 597, 114 N.E.2d 686, 690 (1953); Daniels v. Detroit, etc. R. Co., 163 Mich. 468, 475, 128 N.W. 797 (1910); Larkin v. Saffarans, 15 F. 147, 149 (W.D.Tenn.1883). The court rule and statute herein considered, do not create or define a new cause of action, but merely set forth the procedure to be employed in obtaining redress for breach of pre-existing duties.

Defendant cites, in further support of its argument, cases which hold that non-resident statutes cannot be construed to apply retroactively, e. g. State ex. rel. Clay Equipment Corporation v. Jensen, Supreme Court of Missouri, 363 S.W.2d 666 (1963); Cassan v. Fern, 33 N.J.Super. 96, 109 A.2d 482 (1954); Monacelli v. Grimes, 9 Terry 122, 48 Del. 122, 99 A.2d 255 (1953); Davis v. Jones, 247 Iowa 1031, 78 N.W.2d 6 (1956); contra, Tellier v. Edwards, 56 Wash.2d 652, 354 P.2d 925 (1960); Ogdon v. Gianakos, 415 Ill. 591, 114 N.E.2d 686 (1953).

These cases may be distinguished from the instant case in that the non-resident statutes, so construed, provided that a person, upon the commission of a specified act, such as the act of a motorist entering the state, was deemed to have appointed a state official as his agent for the purpose of accepting service of process. This fictional agency relationship provided the basis for the state's jurisdiction over the non-resident. Accordingly, if the effective date of such a statute was subsequent to the motorist's entry, the statute was held not to have created a prior agency relationship which in fact did not exist.

In the instant case, the relationship which provides the basis for the state's exercise of jurisdiction over the defendant is the relationship of claimed tortfeasor and victim which relationship existed prior to the effective date of the statute, and is independent of the statute.

2. *Defendant Ensign-Bickford Corporation has sufficient contacts with Michigan to subject it to limited personal jurisdiction.*

It is defendant's further contention that application of the Michigan statute to defendant Ensign-Bickford Corporation violates the due process guarantee of the Fourteenth Amendment to the United States Constitution.

It is not clear whether state law should be employed to govern the extent of federal jurisdiction in diversity cases.[1]

1. Compare, Clark, J. in Jaftex Corp. v. Randolph Mills, 282 F.2d 508 (2nd Cir., 1960); Biggs, C. J., in Partin v. Michaels Art Bronze Co., 202 F.2d 541, 545 (3rd Cir., 1953); Wilson, J., in First Flight Co. v. National Carloading Corp., 209 F.Supp. 730 (E.D.Tenn.1962) and Picard, J., in K. Shapiro, Inc. v. New York Central Railroad Co., 152 F.Supp. 722, (E.D.Mich.1957) with Friendly, J., in Jaftex Corp. v. Randolph Mills, 282 F.2d 508, 516 (2nd Cir.1960); Goodrich, J., in Partin v. Michaels Art Bronze Co., 202 F.2d 541 (3rd Cir.1953) and in Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir.1948); Major, C. J., in Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 199 F.2d 485 (7th Cir.1952); and Hutcheson, C. J., in Rosenthal v. Frankfort Distillers Corp., 193

However, whether or not state or federal law governs, the same standard, based upon the contacts with the forum state that make it fair to require a foreign corporation to defend a suit in the forum state, traditionally has been used to define both the due process limits of state jurisdiction and the extent of federal jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958); Scholnik v. National Airlines, Inc., 219 F.2d 115 (6th Cir.1955).[2] Moreover, the practice of applying the same "minimum contacts" approach to both federal and state jurisdiction is consistent with the federal policy of imposing upon the district courts the role of a state forum in diversity cases. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Under the doctrine of International Shoe, "minimum contacts" such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" must be present. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). Applying this test to the Ensign-Bickford Corporation, it appears from the affidavits submitted to the court that defendant Ensign-Bickford is engaged in the manufacture and sale of safety fuse, primacord detonating fuse, blasting accessories, pyrotechnical devices and synthetic yarns. Its factories are in Simsbury and Avon, Connecticut. All sales are made within Connecticut and are delivered F. O. B. Simsbury or Avon. Title to the products passes to the purchaser upon delivery in Connecticut. Although Ensign-Bickford is not authorized to do business in Michigan, has no registered agent for the service of process in Michigan, has no employees in Michigan, no offices, telephones or property in Michigan and does not solicit business from ultimate users in Michigan, the total yearly dollar volume of Ensign-Bickford's products shipped to Michigan exceeded $130,000 in 1957 and 1958. Defendant is DuPont's sole supplier of safety fuse and hot wire fuse lighters in the Eastern United States. The products alleged to have caused the injury in the instant case were shipped F. O. B. Connecticut to DuPont's magazine in Wisconsin and shipped by DuPont into Michigan. Thus, the contact of the corporation with Michigan consists not only of the presence of the alleged defective product but also of the presence of approximately fifteen million feet of fuse shipped from the Ensign-Bickford Corporation each year on common carriers destined for points in Michigan as was represented in the affidavit of John E. Ellsworth, President of the Ensign-Bickford Corporation.

According to the teaching of International Shoe, an "estimate of the inconveniences" which would result from a trial away from the corporation's "home" or principal place of business is relevant. International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In this regard, defendant corporation would be put to the expense of defending in a court miles away from its principal place of business where the

F.2d 137 (5th Cir.1951). See also Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) and Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Decisions in this Circuit have tended to answer questions of jurisdiction by reference solely to federal law. Scholnik v. National Airlines, Inc., 6th Cir., 219 F.2d 115 (1955); Bach v. Friden Calculating Mach. Co., Inc., 167 F.2d 679 (6th Cir. 1948); Lasky v. Norfolk & W. Ry. Co., 157 F.2d 674 (6th Cir.1946).

2. Such a standard may or may not impose a constitutional limitation on the jurisdiction of the federal courts. See Brandeis in Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1925), and Wilson, J., in First Flight Company v. National Carloading Corporation, 209 F.Supp. 730, 736 (E.D. Tenn.1962).

witnesses relating to the care taken in the manufacturing process are most likely to reside. Defendant's inconvenience must be balanced against the inconvenience and expense to plaintiff widow in bringing suit in Connecticut, the fact that the witnesses relating to the circumstances of the accident and the nature of the injuries are most likely to be in Michigan, and the fact that the law governing the substantive question of liability is most likely that of Michigan.[3]

Defendant urges, aside from the "minimum contacts" and "balancing of interests" approach, that " * * * it is essential in each case that there be some acts by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).

█ From the fact that defendant is the sole supplier of safety fuse and hot wire fuse lighters for DuPont and other companies which distribute and sell explosives in Michigan, the fact that in each of the years 1957 and 1958, defendant Ensign-Bickford loaded onto common carriers destined for points in Michigan approximately fifteen million feet of fuse and the fact that the total dollar volume of products shipped to Michigan exceeded $130,000 in these years, the court finds such purposeful contacts with Michigan that a Michigan procedure which, upon adequate notice, requires the corporation to respond to a suit here does not offend traditional notions of fair play.

Unlike the situation of the Delaware Trust Company in Hanson v. Denckla, supra, which had little or no responsibility for the movement of the settlor of the trust, and little or no concern over the development of a "market" in Florida, the Ensign-Bickford Corporation in the instant case participated in the direct shipment of its products into Michigan and presumably was deeply interested in preserving and developing the Michigan market for its products. As in McGee v. International Life Insurance Co., supra, the cause of action in the instant case arose out of the alleged contacts with the state. Like California's "manifest interest" in providing redress for its residents when their insurers refuse to pay claims, the State of Michigan, which ranks second in output of iron ore among the states, may have a "manifest interest" in permitting a Michigan citizen injured here by alleged negligent manufacture of blasting devices to seek redress in its courts.

The court, therefore, holds that defendant is subject to limited personal jurisdiction and defendant's motion is denied.[4]

An order may be entered in accordance with this Opinion.

---

3. Perhaps the "estimate of inconvenience" would be more appropriate in response to a plea of "forum non conveniens" rather than in reply to an objection to jurisdiction. See L. Hand in Kilpatrick v. Texas & P. Ry. Co., 166 F.2d 788, 791 (C.A.2d 1948).

4. *Accord:* Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1961); McMahon v. Boeing Airplane Co., 199 F. Supp. 908 (N.D.Ill.1961); Hutchinson v. Boyd & Sons Press Sales, 188 F.Supp. 876 (D.C.Minn.1960); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (1960); See also, Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193 (1951).

*Contra:* Erlanger Mills, Inc. v. Cohoes Fibre Mills, 239 F.2d 502 (4th Cir., 1956); Trippe Manufacturing Co. v. Spencer Gifts, 270 F.2d 821 (7th Cir.1959); Mann v. Equitable Gas Co., 209 F.Supp. 571 (N.D.W.Va.1962); Pendzimas v. Eastern Metal Products Corp., D.C.Minn., 218 F.Supp. 524; Moss v. Winston-Salem, 254 N.C. 480, 119 S.E.2d 445 (1961).